UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENÉ RIVERA,

                          Petitioner,

          - against -

ROBERT ERCOLE,

                          Respondent(s).

09 Civ. 5547 (DAB)(PED)

**REPORT AND
RECOMMENDATION**

TO:   **THE HONORABLE DEBORAH A. BATTS**
      **UNITED STATES DISTRICT JUDGE**

# I.  INTRODUCTION

René Rivera ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  On April 19, 2005, Petitioner was convicted of second degree murder, as well as various weapons and narcotics offenses, in Rockland County Court (Kelly, J.).  He is serving a sentence of twenty-five years to life.  This petition comes before me pursuant to an Order of Reference dated June 24, 2009 (Dkt. 3).  For the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

# II.  BACKGROUND

A.   **The Crime, Search Warrant, Indictment, Trial, and Sentencing**[1]

Petitioner and the victim, Michael Santana ("Santana"), were friends and sometimes partners in a marihuana enterprise.  The prosecution's theory of the case was that Petitioner

---

[1] This synopsis is taken from a review of Respondent's Affidavit in Opposition to the Petition ("Resp't Aff.") (Dkt. 5), Respondent's Memorandum of Law in Opposition to the Petition ("Resp't Mem.") (Dkt. 5), Respondent's Supplemental Answer (Dkt. 29), Respondent's Supplemental Memorandum of Law in Opposition to the Petition ("Resp't Supp. Mem.") (Dkt. 29), the Brief for Respondent ("Br. for Resp't") (attached to Resp't Aff., at Ex. B), Petitioner's Appellant Brief ("Appellant's Br.") (Ex. A), Petitioner's *Pro Se* Supplemental Br. ("Supp. Br.") (Ex. C), and the transcripts (Dkts. 6-19).  Exhibits A-I are attached to Resp't Aff.  (Dkt. 5.) Exhibits J-N are docketed as a separate appendix.  (Dkt. 28.)

killed Santana following a business dispute.  Santana was last seen alive on February 11, 2003,

when his brother dropped him off near Petitioner's home in Nyack, New York.  Petitioner's

neighbor, Scott Andrasko ("Andrasko"), later informed the police that during the evening of

February 11, he heard moaning outside of Petitioner's house, saw Petitioner and another man

carry a limp body into Petitioner's basement, and observed through a living room window as

Petitioner picked up and dropped a lifeless leg.  The police obtained a warrant, and during a

search executed on February 19 and 20, 2003, they recovered Santana's hair from a pathway

adjacent to the house and the area where Andrasko heard the moaning.  A gun, narcotics, and

drug paraphernalia were also recovered from Petitioner's home.

On February 21, 2003, Petitioner fled the country using a passport issued to his brother,

Ricardo Rivera.  Petitioner traveled abroad, accompanied at times by a girlfriend, Amanda

Stanley ("Stanley").  Petitioner and Stanley were eventually apprehended in Missoula, Montana.

A Montana corrections officer recovered coded notes exchanged by the couple: in the notes,

Petitioner advised Stanley to be "foggy" if she was called to testify, and Stanley assured

Petitioner that she would lie if called as a witness.  After Petitioner was extradited to New York,

he befriended a jailhouse informant who later testified that Petitioner admitted that he and his

brother Ricardo had killed Santana and then arranged to dispose of the corpse.[2]  Santana's body

was never found.

Petitioner and his brother were indicted on second degree murder charges.  Petitioner was

separately indicted on drug and weapon charges.  The court severed the brothers' murder cases,

---

[2] Santana's brother testified that Petitioner told him that Santana was being "chopped
up."  There was also evidence that Petitioner attempted to locate an incinerator on the evening of
February 11, and that an associate tried to procure a commercial waste container early the
following morning.

consolidated Petitioner's murder and drug charges for trial, but severed the weapon charge.

Petitioner's trial commenced in January 2005 and lasted more than two weeks. Petitioner

testified in his defense. On February 18, 2005, the jury returned a guilty verdict as to the

following offenses: murder in the second degree, in violation of N.Y. Penal Law § 125.25(1);[3]

criminal possession of a controlled substance in the fourth degree, in violation of N.Y. Penal

Law § 220.16(1);[4] criminal possession of marihuana in the fourth degree, in violation of N.Y.

Penal Law § 221.15;[5] and criminally using drug paraphernalia in the second degree, in violation

of N.Y. Penal Law § 220.50(2), (3), and (3) (three counts).[6] Petitioner then pled guilty to

---

[3] "A person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person . . . ." N.Y. Penal Law § 125.25(1).

[4] "A person is guilty of criminal possession of a controlled substance in the fourth degree when he knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more . . . ." N.Y. Penal Law § 220.09(1).

[5] "A person is guilty of criminal possession of marihuana in the fourth degree when he knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than two ounces." N.Y. Penal Law § 221.15.

[6]

> A person is guilty of criminally using drug paraphernalia in the second degree when he knowingly possesses or sells . . .
>
> 2. Gelatine capsules, glassine envelopes, vials, capsules or any other material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant; or . . .
>
> 3. Scales and balances used or designed for the purpose of weighing or measuring controlled substances, under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same

criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(3).[7]

On April 19, 2005, Petitioner was sentenced to concurrent terms of twenty-five years to life imprisonment on the murder conviction, seven and one-half to fifteen years imprisonment on the controlled substance conviction, three and one-half to seven years imprisonment on the weapon conviction, and one year imprisonment on the marihuana and drug paraphernalia convictions.

## B.    **Direct Appeal**

Petitioner, through counsel, appealed his conviction to the New York State Appellate Division, Second Department and raised the following claim:

> (1)    the circumstantial evidence presented at trial was legally insufficient to convict Petitioner beyond a reasonable doubt of murder.

(See generally Appellant's Br.)  Petitioner also submitted a *pro se* supplemental brief in which he raised the following claims:

> (2)    the evidence presented at trial was legally insufficient to prove the element of intent for the murder conviction, (see Supp. Br., at 20-28);
> (3)    the verdict was against the weight of the evidence, (see id. at 28-44);
> (4)    Petitioner was deprived his right to a fair trial due to prosecutorial misconduct, (see id. at 8-19); and

--------------------------

for purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant.

N.Y. Penal Law § 220.50(2)-(3).

[7]

A person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person knowingly possesses a machine-gun, firearm, rifle or shotgun which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such machine-gun, firearm, rifle or shotgun . . . .

N.Y. Penal Law § 265.02(3), amended by 2005 N.Y. Sess. Laws ch. 764, § 2 (2005).

(5)     Petitioner was deprived his right to the effective assistance of counsel due to counsel's failure to object to prosecutorial misconduct, counsel's unfamiliarity with the science behind DNA evidence, and counsel's poor in cross-examinations, (see id. at 45-48).

The Second Department affirmed the conviction.  People v. Rivera, 853 N.Y.S.2d 627 (App. Div. 2008).  The New York Court of Appeals denied leave to appeal on June 18, 2008.  People v. Rivera, 10 N.Y.3d 939 (2008).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.  (See Am. Pet. Setting Forth Supplemental Cl., at 2 (Dkt. 25).)

**C.     *Error Coram Nobis* Petition**

On or about August 31, 2009, Petitioner, proceeding *pro se*, moved in the Second Department for a writ of *error coram nobis* on the following ground:

(1)     Petitioner was denied his right to the effective assistance of appellate counsel due to counsel's failure to raise the claims Petitioner argued in his *pro se* supplemental brief.

(See Pet'r Aff. (Ex. J).)  The Second Department denied the petition.  People v. Rivera, 891 N.Y.S.2d 295, 295 (App. Div. 2010).  The New York Court of Appeals denied leave to appeal on April 19, 2010.  People v. Rivera, 14 N.Y.3d 844 (2010).

**D.     *Habeas Corpus* Proceedings**

By petition dated May 22, 2009, Petitioner sought a writ of *habeas corpus*.  (Dkt. 1.)  On September 14, 2009, Petitioner's request to stay the proceedings pending the outcome of his *error coram nobis* petition was granted.  (Dkt. 20.)  On May 26, 2010, Petitioner's request to amend his petition to incorporate his ineffective assistance of appellate counsel claim was granted.  (Dkt. 24.)  Accordingly, Petitioner raises the following claims on *habeas* review:[8]

_____

[8] Petitioner attached his appellate and *pro se* supplemental briefs to his petition.  He attached his *error coram nobis* petition to his amended petition.  Accordingly, I cite to those original documents herein.

5

(1)     the circumstantial evidence presented at trial was legally insufficient to convict Petitioner beyond a reasonable doubt of murder;

(2)     the evidence presented at trial was legally insufficient to prove the element of intent for the murder conviction;

(3)     the verdict was against the weight of the evidence;

(4)     Petitioner was deprived his right to a fair trial due to prosecutorial misconduct;

(5)     Petitioner was deprived his right to the effective assistance of counsel due to counsel's failure to object to prosecutorial misconduct, unfamiliarity with the science behind DNA evidence, and poor job in cross-examination; and

(6)     Petitioner was denied his right to the effective assistance of appellate counsel due to counsel's failure to raise the claims Petitioner argued in his supplemental brief.

## III. DISCUSSION

**A.     Applicable Law on *Habeas Corpus* Review**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

### 1.     *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations.  See § 2244(d).  The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under

6

the statute, the limitation period is tolled only during the pendency of a properly filed application

for State post-conviction relief, or other collateral review, with respect to the judgment to be

challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct
> > review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by
> > State action in violation of the Constitution or laws of the United States is
> > removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially
> > recognized by the Supreme Court, if the right has been newly recognized by
> > the Supreme Court and made retroactively applicable to cases on collateral
> > review; or
> > (D) the date on which the factual predicate of the claim or claims presented
> > could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction
> or other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a

petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida,

130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v.

McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129,

134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable

tolling must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

2.   ***Exhaustion Requirement***

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

8

221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005).  A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).  A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989) (internal quotation marks and citation omitted), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted

claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.    *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

### 4.    *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became

effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

11

Where the state court "did not reach the merits" of the federal claim, then "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed *de novo*." Cone v. Bell, 556 U.S. 449, 472 (2009); see § 2254(d).

## B.   **Analysis of Petitioner's Claims**

### 1.   ***Legally Insufficient Evidence (Claims 1 and 2)*[9]**

In the brief filed by appellate counsel as well as in the supplemental *pro se* brief filed by Petitioner, Petitioner argued on direct appeal that the evidence adduced at trial was legally insufficient to support the murder conviction. Respondent contends, in part, that these claims are procedurally barred from federal *habeas* review. (See Resp't Mem., at 10-17.) Respondent is correct.

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claims One and Two. See Ylst, 501 U.S. at 803. It is clear from this decision that the court actually relied upon New York's contemporaneous objection rule in denying the claims as unpreserved for appellate review.[10] Rivera, 853 N.Y.S.2d

---

[9] I identify the claims as I have numbered them in Section II(D) above.

[10] The opinion reads, in pertinent part:

> The defendant's contention that the evidence was legally insufficient to establish his guilt of murder in the second degree is unpreserved for appellate review (see CPL 470.05(2) . . . ). In any event, viewing the evidence in the light most favorable to the prosecution . . . , it was legally sufficient to establish, beyond a reasonable doubt, that the defendant, while acting in concert . . . , caused the victim's death and intended to do so . . . .

Rivera, 853 N.Y.S.2d at 627-28 (internal citations omitted). The court's citation to N.Y. Crim. Proc. Law § 470.05(2) reveals that it relied upon New York's contemporaneous objection rule.

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a

at 627-28.  While the court went on to deny the claim on the merits, the state court's reliance on

this procedural rule constitutes an independent and adequate ground for its decision.  See Harris,

489 U.S. at 264 n.10 (state court decision that relies on a procedural rule to dismiss a claim, but

which, in the alternative, also proceeds to dismiss the claim on the merits, relies on the

independent state law ground for dismissal); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810

n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for

appellate review" and then rules "in any event" that the claim also fails on its merits, the claim

rests on the independent state law rule which may preclude federal *habeas* review); see also

Wainwright v. Sykes, 433 U.S. 72, 86 (1977) (contemporaneous objection rule constitutes

adequate procedural ground for dismissal); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir.

1994) (same).  Petitioner has not asserted cause and prejudice or a fundamental miscarriage of

justice that would allow this Court to circumvent his procedural default and review the merits of

the claims.  Accordingly, Claims One and Two should be denied as procedurally barred.

## 2.    ***Weight of the Evidence (Claim 3)***

Petitioner asserts the jury's verdict was against the weight of the evidence adduced at

trial.  Respondent contends this claim is not cognizable upon federal *habeas* review.  (See Resp't

Mem., at 25-27.)  Respondent is correct.

---

protest thereto was registered, by the party claiming error, at the time of such ruling
or instruction or at any subsequent time when the court had an opportunity of
effectively changing the same.

N.Y. Crim. Proc. Law § 470.5(2).  Under this section, "an objection to a ruling or instruction of a
criminal court must be raised contemporaneously with the challenged ruling or instruction in
order to preserve the objection for appellate review."  Green v. Travis, 414 F.3d 288, 294 (2d
Cir. 2005) (citing People v. Jones, 440 N.Y.S.2d 248, 254 (App. Div. 1981)).  Additionally, the
objection must "be made with sufficient specificity to enable the trial court to respond."  Id.

It is well-established that a weight of the evidence claim is exclusively a matter of state law and therefore does not present a federal question. See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011), cert. denied, 132 S. Ct. 1151 (2012) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus");[11] Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (weight of evidence claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15[12] and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  Accordingly, Claim Three must be denied.

### 3.    *Prosecutorial Misconduct (Claim 4)*

Petitioner asserts he was deprived of his fundamental right to a fair trial due to various misconduct by the trial prosecutor.  Specifically, Petitioner argues:

---

[11] Copies of unreported cases cited herein will be mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

[12] "Upon an appeal to an intermediate appellate court from a judgment . . . , such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant."  N.Y. Crim. Proc. Law § 470.15(1).  "A reversal or a modification of a judgment . . . , must be based upon a determination made . . . [u]on the law; . . . [u]pon the facts; . . . [a]s a matter of discretion in the interest of justice; or . . . [u]pon any two or all three of the bases specified [above]."  Id. § 470.15(3).  "The kinds of determinations of reversal or modification deemed to be on the facts include, but are not limited to, a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  Id. § 470.15(5).

(a)     the prosecutor called Stanley to testify despite knowing that she would be an uncooperative witness and invoke her Fifth Amendment privilege against self-incrimination;

(b)     the prosecutor improperly cross-examined Petitioner; and

(c)     the prosecutor made various improper and prejudicial comments in her summation.

(See Supp. Br., at 1-19.)  Respondent contends, in part, that this claim is procedurally barred from federal *habeas* review.  (See Resp't Mem., at 29-30.)  Respondent is correct.

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claim Four.  See Ylst, 501 U.S. at 803.  It is clear from this decision that the court relied upon New York's contemporaneous objection rule in denying the claim as unpreserved for appellate review.[13]  Rivera, 853 N.Y.S.2d at 628; see Harris, 489 U.S. at 264 n.10; Fama, 235 F.3d at 810 n.4.  As discussed above, such a decision constitutes an adequate and independent ground for dismissal of a claim.  See Wainwright, 433 U.S. at 86; Bossett, 41 F.3d at 829 n.2.  Accordingly, federal review of the claim is precluded absent a showing of cause and prejudice or a fundamental miscarriage of justice.

Petitioner has raised a separate claim of ineffective assistance of trial counsel based, in part, on counsel's failure to object to prosecutorial misconduct (Claim Five).  This argument may be liberally construed to assert cause for the procedural default applicable to Claim Four. See Haines v. Kemer, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be liberally construed); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (application submitted by *pro se*

---

[13] The opinion reads, in pertinent part: "The remaining contentions raised in the defendant's supplemental pro se brief are unpreserved for appellate review and, in any event, either are without merit or do not warrant reversal." Rivera, 853 N.Y.S.2d at 628.  The court specifically identified each of the other claims that Petitioner raised in his *pro se* brief, leaving Claim Four the only "remaining contention."  Id.

15

petitioner should be "read liberally and should be interpreted to raise the strongest arguments that [it] suggests"). Cause may only be demonstrated by showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Coleman, 501 U.S. at 753 (emphasis in original) (the failure "must be something *external* to the petitioner, something that cannot fairly be attributed to him"). Attorney error may establish cause if it rises to the level of ineffective assistance of counsel. Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). However, as discussed in connection with Claim Five below, Petitioner cannot establish that trial counsel was ineffective. Because Petitioner cannot successfully circumvent his procedural default, Claim Four must be denied as procedurally barred. See McClesky v. Zant, 499 U.S. 467, 502 (1991) (where a petitioner fails to establish cause to excuse a procedural default, the court need not also determine whether he suffered prejudice).

### 4.   *Ineffective Assistance of Trial Counsel (Claim 5)*

Petitioner asserts he was denied his right to the effective assistance of counsel. Specifically, Petitioner argues his trial counsel was ineffective for:

    (a)    failing to object to the prosecutorial misconduct identified in Claim Four;
    (b)    being "utterly unfamiliar with the science behind DNA evidence"; and
    (c)    doing "a poor job cross-examining key witnesses."

(Supp. Br., at 47.) Respondent contends the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't Mem., at 43-47.) Respondent is correct.

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claim Five. See Ylst, 501 U.S. at 803. It is clear that the court denied this claim on the merits. See Rivera, 853 N.Y.S.2d at 628 (specifically

16

addressing and denying ineffective assistance of counsel claim).  Accordingly, I address Claim

Five pursuant to AEDPA's deferential standard of review.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides

that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his

defense."  U.S. Const. Amend. VI.  The Supreme Court has construed this clause to afford

criminal defendants the right to the *effective* assistance of counsel.  See McMann v. Richardson,

397 U.S. 759, 771 n.14 (1970).  A petitioner's ineffective assistance of counsel claim will

succeed on the merits if the petitioner proves (1) that counsel's representations "fell below an

objective standard of reasonableness," as measured under "prevailing professional norms,"

Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different," id. at 694.

*Habeas* petitioners bear the burden of proving both prongs of the Strickland test.  He or

she must therefore prove that his or her attorney's actions were objectively unreasonable as well

as that he or she was prejudiced to the extent that there exists a reasonable probability that the

result of the proceeding would have been different.  Id. at 689, 693.  To show that an attorney's

conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

Additionally, "[a] fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id.

Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for

17

a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

> **i.** **Ineffective Assistance of Counsel for Counsel's Failure to Object to Prosecutorial Misconduct**

Petitioner asserts his trial counsel was ineffective for failing "to object to various instances of prosecutorial misconduct and [for] fail[ing] to request a mistrial or seek curative instructions from the court." (Supp. Br., at 45.)  Specifically, Petitioner identifies the following alleged instances of prosecutorial misconduct:

> (a)  the prosecutor called Stanley to testify despite knowing that she would be an uncooperative witness and invoke her Fifth Amendment privilege against self-incrimination;
> (b)  the prosecutor improperly cross-examined Petitioner; and
> (c)  the prosecutor made various improper and prejudicial comments in her summation.

(See id. at 1-19.)  Respondent contends the state court's denial of this aspect of Claim Five did not unreasonably apply federal law because no misconduct occurred.  (See Resp't Mem., at 45.) I address Petitioner's contentions *seriatim*.

> **a.** **_Amanda Stanley_**

Petitioner argues defense counsel was ineffective for failing to object to the prosecution's examination of Amanda Stanley.  (See Supp. Br., at 8-14.)  Petitioner's argument fails under Strickland.

> The due process rights of a defendant may be violated both (1) when the prosecution commits misconduct by "mak[ing] a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege" and (2) when, "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case."

United States v. Casamento, 887 F.2d 1141, 1186 (2d Cir. 1989) (quoting Rado v. Connecticut,

607 F.2d 572, 581 (2d Cir. 1979)).

 In this case, the record does not suggest that the prosecutor made a conscious and

flagrant attempt to build its case out of Stanley's invocation of the Fifth Amendment.  Instead,

the transcript shows that, before Stanley testified, the prosecutor reviewed her anticipated direct

examination of Stanley with Stanley's attorney, who confirmed on the record that Stanley was

not expected to invoke her Fifth Amendment privilege.  (Feb. 3, 2005 Tr., at 118-19 (Dkt. 12).)

The prosecutor then questioned Stanley at length and did so without asking Stanley to comment

on any criminal charges pending against her.  However, when the prosecutor asked Stanley,

"What did you do to Riccardo Rivera's passport before . . . it was brought back to New York?,"

Stanley responded by invoking the privilege.  (Id. at 144.)

 The prosecutor immediately asked to approach the bench, and the court recessed the trial.

After ascertaining that no charges related to passport tampering were pending against Stanley,

and that the prosecution did not intend to further pursue the line of questioning which had

elicited the privilege claim, the court indicated that it would deliver a curative instruction, and

defense counsel agreed that this was appropriate.  (Id. at 146.)

 When the trial resumed, the court instructed the jury not to draw any negative inference

from Stanley's refusal to answer this question.[14]  Stanley did not again invoke the privilege

―――――――――――――――

[14] Following the sidebar conference, the court immediately instructed the jury as follows:

> When a witness invokes the privilege of self incrimination, that is a privilege
> that can be asserted by the witness or counsel.
> In this case the witness has asserted that . . . privilege.  The witness has a
> Constitutional right to refuse to answer particular questions, and I have sustained just
> now her right to do so.
> I suggest to you no inference favorable or unfavorable may be drawn from

during her testimony.  On summation, the prosecutor refrained from mentioning Stanley's refusal to answer the passport question.  (See id. at 117-61 (direct exam of Stanley); Feb. 16, 2005 Tr., at 185-242 (Dkt. 16) (prosecutor's summation).)

In this context, there was no basis to conclude that the prosecutor's "single lapse" was "a calculated ruse aimed at inducing the jury to draw [an] improper inference[ ]" from Stanley's assertion of the Fifth Amendment.  Rado, 607 F.2d at 582; see Namet v. United States, 373 U.S. 179, 188-89 (1963)).  Moreover, Stanley's refusal to answer this question did not add critical weight to the prosecution's case.  Petitioner himself testified and acknowledged that he used his brother's passport to travel to various countries in the Caribbean.  While the prosecution did try to connect Petitioner's flight abroad to his consciousness of guilt about the murder, I do not find

---

her refusal to answer [this] question . . . so far.
> However, since the question relates solely to her own credibility as a witness, you may take into consideration her refusal to answer any such questioning in determining as you may with all witnesses to what extent you believe this witness' testimony and how much weight, if any, you choose to give to her testimony in view of her refusal to answer this question.

(Feb. 3, 2005 Tr., at 148-49.)  The court also included in its charge to the jury the following:

> In this case a witness Amanda Stanley [in]voked her Constitutional right to refuse to answer particular questions, and I sustained her right to do so.
> I instruct you that no inference favorable or unfavorable to either party may be drawn by you for her refusal to answer particular questions.
> In simple terms the law does not permit you to guess or speculate in any manner whatsoever what her testimony or answers would have been had she not refused to testify or answer.
> However, since the questions relate solely to her own credibility as a witness, you may take into consideration her refusal to answer such questions in determining[,] as you may with all witnesses[,] to what extent you believe her testimony and how much weight you wish to give to her testimony in view of her refusal to answer those questions.

(Feb. 17, 2005 Tr., at 26-27 (Dkt. 17).)

that any inference may be drawn from Stanley's alleged tampering to the murder case against
Petitioner.  Defense counsel's failure to object on this basis was therefore not deficient conduct.

Indeed, it is well-settled that an attorney is given wide latitude in making strategic and
tactical trial decisions, including "decisions such as when to object."  United States v. Cohen,
427 F.3d 164, 170 (2d Cir. 2005); see Strickland, 466 U.S. at 689 (decisions that "might be
considered sound trial strategy" do not reflect ineffective assistance of counsel); see also, e.g.,
United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992) (quoting United States v. Nersesian,
824 F.2d 1294, 1321 (2d Cir. 1987)) (counsel's "decisions that 'fall squarely within the ambit of
trial strategy . . . , if reasonably made,' cannot support an ineffective assistance claim"); United
States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982) (citing United States v. Aulet, 618 F.2d 182,
189 (2d Cir. 1980)) (explaining the "reluctance to second-guess matters of trial strategy simply
because the chosen strategy has failed"); Clanton v. Rivera, No. 06 Civ. 4756, 2008 WL
2839712, at *24 & n.51 (S.D.N.Y. July 22, 2008) (counsel's decision to refrain from objecting
constitutes represents strategic trial tactic where counsel seeks to avoid "highlighting" witness's
damaging testimony, and collecting cases); Singleton v. Duncan, No. 03 Civ. 561, 2006 WL
73734, at *14 (E.D.N.Y. Jan. 10, 2006) (citing Jones v. Barnes, 463 U.S. 745, 752 (1983), Mayo
v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), and Aparicio, 269 F.3d at 95, and determining
that "a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees
with his counsel's strategy").  A decision not to object is especially defensible where, as here,
the court has already interceded *sua sponte* and has announced its intention to deliver a curative
instruction.  Accordingly, Petitioner's claim does not satisfy the first prong of Strickland.[15]

_____

[15] Even if Petitioner could show that counsel's failure to object following Stanley's
invocation of the privilege was unprofessional, Petitioner could not establish Strickland's second

Petitioner also appears to argue that, because Stanley evaded other questions by repeatedly claiming that she could not remember, the prosecutor's continued questioning constituted misconduct and defense counsel's failure to object to the questioning constituted ineffective assistance. This argument is unavailing. It is clear that Stanley was a reluctant prosecution witness who avoided confirming at trial statements implicating Petitioner that she had given to police investigators. On cross-examination, defense counsel exploited Stanley's change of heart by implying that Stanley had been coerced by the police and eliciting from her an admission that she did not know whether her pre-trial statement to the investigators was true. (Feb. 3, 2005 Tr., at 162.) Defense counsel's failure to handle the issue differently – by objecting to the prosecutor's largely fruitless examination of Stanley – therefore did not amount to deficient conduct. It is clear that Stanley was a material witness concerning issues including Petitioner's whereabouts on the night of the murder as well as his subsequent flight from the jurisdiction, and the prosecution was entitled to rely upon Stanley's earlier cooperation and to expect that she would repeat at trial statements she had previously made. Thus, the prosecutor did not engage in misconduct by calling and questioning Stanley, and Petitioner cannot show that the outcome of his trial would have been different if defense counsel had objected. See, e.g., Cohen, 427 F.3d at 170 (citing Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986) and United States v. Eltayib, 88 F.3d 157, 170 (2d Cir. 1996), and determining that counsel's failure to raise a futile objection does not constitute deficient conduct under Strickland).

### b. *Cross-Examination of Petitioner*

_____

prong. Because the trial court, acting *sua sponte*, delivered a curative instruction, Petitioner cannot establish that the outcome of the proceeding would have been different had counsel also objected.

Petitioner argues that defense counsel was ineffective for failing to object to the prosecutor's cross-examination of Petitioner when she "compel[led him] to characterize the people's witness as a liar." (Supp. Br., at 17.)  Petitioner's argument fails under Strickland.

> Once a defendant testifies and places his credibility in issue, a prosecutor need not tread lightly in cross-examining him or arguing his case to the jury.  The prosecutor must not, of course, stray from the record evidence or relevant issues.  As an advocate, he is permitted, within the discretionary limits imposed by the trial court, to cross-examine a defendant as forcefully as possible.  He is similarly afforded wide latitude in his summation.  In assessing the propriety of a prosecutor's cross-examination or summation, the arguments raised by the defendant must be taken into account since the prosecutor has the right to respond.

People v. Overlee, 666 N.Y.S.2d 572, 575 (App. Div. 1997) (internal quotation marks and citations omitted).  In addition,

> [A] distinction has to be made between a defendant's testimony that conflicts with that of the People's witnesses and yet is susceptible to the suggestion that the witnesses spoke out of mistake or hazy recollection and the situation where . . . the defendant's testimony leaves open only the suggestion that the People's witnesses have lied.  In the latter circumstance, the prosecution has the right to ask whether the witnesses are liars.

Id. at 576.

In this case, the prosecutor questioned Petitioner on cross-examination about Andrasko's testimony that he saw Petitioner carrying a lifeless body into Petitioner's house.  Specifically, the prosecutor asked Petitioner several times if he believed that Andrasko lied on the stand.  However, Petitioner never stated on direct exam that Andrasko was a "liar."  Rather, he testified that Andrasko's testimony was "not true." (Feb. 16, 2005 Tr., at 40.)  Twice the court admonished the prosecutor for her questions and instructed the jury on the difference between a lie and an untrue or mistaken statement.  (See id. at 71-73.)[16]

_____

[16] The colloquy included the following:

Thus, to the extent that the prosecutor's questions mischaracterized Petitioner's testimony, the court itself interrupted the examination, admonished the prosecutor, and provided the jury with curative instructions.  Petitioner cannot now establish that the result of the proceeding would have been different had his attorney also registered an objection.  Further, as noted above, counsel's decision not to object and draw the jury's attention to unhelpful

_____

| | |
|---|---|
| Q: | So a schoolteacher of three young triplets who puts his children to bed by seven o'clock every night, who never saw anybody intoxicated or impaired by alcohol, fabricated this entire story, is that what you are telling us, sir? |
| A: | No, that's not what I said. |
| Q: | You said he lied and nothing was true? |
| A: | As far as referring to me, it was not true. |
| Q: | You are the only one he referred to when he testified, correct? |
| A: | He said he seen some people carrying somebody into my house. |
| Q: | Like I said, this man, this schoolteacher[,] lied about observing you carrying Michael Santana's lifeless body into your house? |
| A: | He said he seen a dark, two dark skinned men and a dark skin[ned] man in . . . white carrying somebody into my house. |
| COURT: | Just an admonition, the question can't be put that somebody else lied because a lie is a material and intentional misrepresentation of fact[.] [T]he person can be mistaken.  The question can be asked[,] was that person incorrect[.] [T]he alternative is not a lie, there is other options or possibilities.  I don't want you to think one is necessarily diametrically opposed.  You'll make a determination if a person lied or misstatement in the kaleidoscope of the instance. |
| Q: | When Scott Andrasko sat [in] the same seat you are sitting in now and he said that his neighbor was carrying that lifeless body into the basement of his home, he was not being truthful, is that what you are asking this jury to believe? |
| A: | He was not referring to me, that was not me, I was, I wasn't there at the time he was talking about. I don't know what he is talking about. I would never do that. |
| Q: | That wasn't my question? |
| COURT: | Counsel, you can't put into lies or not being truthful.  He cannot characterize somebody else's testimony, that was my previous admonition. |

(Feb. 16, 2005 Tr., at 71-73.)

24

testimony is certainly a reasonable strategy.  Accordingly, Petitioner fails to establish either prong of Strickland.

### c.     *Prosecutor's Summation*

Petitioner argues that defense counsel was ineffective for failing to object to or otherwise register error when the prosecutor, during her summation, made various comments.  Specifically, Petitioner asserts that the prosecutor improperly: (i) characterized Petitioner's testimony "as a concoction, a creative story and simply put, as lies," and stated that Petitioner "tailor[ed] his testimony to conform to the People's proof, (Supp. Br., at 14, 16 (internal quotation marks omitted)); (ii) "vouched for the credibility of the People's witnesses," (id. at 16); and (iii) "appealed to the jurors sympathy," (id. at 17).  Petitioner's argument fails under Strickland.

Under New York law, "[i]t is . . . the right of counsel during summation to comment upon every pertinent matter of fact bearing upon the questions the jury have to decide." People v. Ashwal, 39 N.Y.2d 105, 109 (1976) (internal quotation marks and citations omitted).  This right applies both to defense counsel and the prosecutor.  Id. (internal citations omitted).  Nonetheless,

> [A]lthough counsel is to be afforded the widest latitude by way of comment, denunciation or appeal in advocating his cause[,] summation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command.  There are certain well-defined limits.

Id. (internal quotation marks and citation omitted).  "[S]tatements during summation are not improper if they constitute a 'fair comment on the evidence' at trial or a 'fair response to the remarks made by the defense counsel during summation.'" Francis v. Conway, No. 09 Civ. 3391, 2010 WL 23327, at *7 (E.D.N.Y. Jan. 5, 2010) (quoting People v. Perez, 794 N.Y.S.2d 439, 440 (App. Div. 2005)).  However, prejudicial and inflammatory statements by a prosecutor

are improper.  People v. Lombardi, 20 N.Y.2d 266, 272 (1967).  Where such comments are made

in summation, a new trial is warranted if the comments are so egregious that they could not have

had a mere harmless effect.  People v. Calabria, 94 N.Y.2d 519, 522-23 (2000); see also, e.g.,

People v. Joseph, 893 N.Y.S.2d 306, 308-09 (App. Div. 2009).  Improper comments by a

prosecutor include, *inter alia*, "call[ing] upon the jury to draw conclusions which are not fairly

inferrable from the evidence," Ashwal, 39 N.Y.2d at 110 (citations omitted); "accusing the

defendant of lying on the witness stand and tailoring his testimony to conform to the People's

proof," People v. Pagan, 769 N.Y.S.2d 741, 741 (App. Div. 2003) (internal quotation marks and

citations omitted); providing "his own opinion regarding the truth and falsity of witnesses'

testimony and vouch[ing] for . . . credibility," People v. Walters, 674 N.Y.S.2d 114, 116 (App.

Div. 1998); and "making purposefully inflammatory remarks designed to appeal to the jury's

sympathy," id.

    In this case, Petitioner admitted that shortly after February 11, 2003, he told Stanley to lie

to the police and tell them that he and Stanley went into New York City that night.  (Feb. 16,

2005 Tr., at 83.)  The prosecutor later characterized this exchange as a "concoction" while cross-

examining Petitioner.  She also used the term "concoction" in her summation when she referred

to the episode.  (See id. at 87, 190, 240.)  Because Petitioner admitted that the story was a lie, the

prosecutor's statements were fair comments on the evidence.  Defense counsel's failure to make

a futile object did not, therefore, constitute deficient conduct.  Furthermore, no reasonable

probability exists that the result of the proceeding would have been different had counsel made

such an objection.

    The prosecutor's summation characterized other portions of Petitioner's testimony as

"concoctions" or "stories."  (See Supp. Br., at 14-15 (citing pages in the transcript where the

prosecutor used the terms "lie," "story," or "concoction" with respect to Petitioner's testimony).)

Under New York law, however, comments on the credibility of a defendant's testimony are fair

where "'fundamental conflicts between the testimony of the [State's witnesses] and the

defendant'" exist. People v. Olds, 635 N.Y.S.2d 61, 61 (App. Div. 1995) (quoting People v.

Thomas, 588 N.Y.S.2d 395, 395 (App. Div. 1992)); see also, e.g., People v. Powell, 732

N.Y.S.2d 357, 357-58 (App. Div. 2001) ("[t]he prosecution's characterization of the case as one

of 'competing stories' was permissible because it was responsive to the conflicting testimony

elicited from both sides during the trial and to the defendant's focus on the issue of credibility

during his summation"). In this case, Petitioner's version of the events conflicted with the

version presented by the State's witnesses. It was therefore proper for the prosecutor to argue

that Petitioner's version was not credible. Furthermore, a review of the entire transcript of the

prosecutor's summation does not reveal anything which crossed the line between normal,

zealous advocacy and unfair, inflammatory comment. Finally, counsel's decision not to object

during the prosecutor's summation may certainly be considered a reasonable tactical decision.

See, e.g., Gatto v. Hoke, 809 F. Supp. 1030, 1039 (E.D.N.Y. 1992) (citing United States v.

Grunberger, 431 F.2d 1062, 1068-69 (2d Cir. 1970)) (no ineffective assistance of counsel where

"counsel's failure to object to the prosecutor's summation represents his tactical decision to

avoid underscoring the prosecutor's statements so as to draw the jury's attention to them").

Accordingly, Petitioner cannot show that his attorney's performance was deficient or that the

result of the trial would have been different had his attorney made such objections.

Petitioner's next argument may be liberally construed to argue that the prosecutor

improperly bolstered the credibility of the State's witnesses. (See Supp. Br., at 16-17.)

Although statements such as "there is no reason" for the witness to lie, and the jury "has to

27

believe" the State's witnesses, may be considered statements which push the boundary between proper and improper comment, (see, e.g., Feb. 16, 2005 Tr., at 189, 211), my review of the summation and record as a whole does indicate that the comments were so egregious as to have deprived Petitioner of a fair trial. Additionally, as noted above, an attorney's decision to refrain from objecting during summation may constitute a reasonable strategic decision. Petitioner therefore cannot show that counsel's performance was deficient or that the result of the proceeding would have been different had he made such objections during summation.

Finally, I do not agree with Petitioner's argument that certain aspects of the prosecutor's summation were irrelevant and made solely for purposes of appealing to the jury's sympathy. (See Supp. Br., at 17). For instance, the prosecutor's reference to the "closeness" of Santana and his family was relevant in order to argue that Santana – whose body was never recovered – would have contacted his family if he were alive. Again, my own review of the summation does not reveal anything which falls outside the normal realm of zealous advocacy or which is so egregious as to have deprived Petitioner of a fair trial. Accordingly, Petitioner cannot show that counsel's strategic decision not to make such futile objections was unreasonable or that the result of the proceeding would have been different had he done so.

Petitioner has failed to meet his burden under Strickland for this portion of Claim Five. As such, the state court's denial was not an unreasonable application of federal law. Accordingly, this Court should deny this portion of Claim Five. In addition, because Petitioner cannot show that counsel was ineffective, he cannot establish cause in order to circumvent the procedural default applicable to Claim Four.

      **ii.**      **<u>Ineffective Assistance of Counsel for Failure to Understand DNA</u>**

Petitioner asserts that "[a] review of the entire record will demonstrate that defense counsel . . . was utterly unfamiliar with the science behind DNA evidence." (Id. at 47.) Petitioner does not provide further explanation to support this contention. Such an unsupported and conclusory assertion is insufficient to warrant federal *habeas* relief. See Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (per curiam) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); see also, e.g., McLean v. Green, No. 05 Civ. 5603, 2009 WL 4778824, at *15 (E.D.N.Y. Apr. 15, 2009) ("conclusory assertions, absent additional specific support, are insufficient to overcome the strong presumption that counsel acted reasonably"); Williams v. Bennett, No. 99 Civ. 1119, 2003 WL 21143070, at *8 n.13 (E.D.N.Y. Jan. 3, 2003) (quoting Loving v. O'Keefe, 960 F. Supp. 46, 51 (S.D.N.Y. 1997) and citing Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998) (per curiam)) ("'conclusory allegation[s] without specific factual allegations supporting the conclusion[s] [are] insufficient for habeas corpus relief,' . . . even where a petitioner is proceeding *pro se*"). In any event, I have reviewed the record and conclude that defense counsel's cross-examination of the State's forensic witnesses was reasonably effective. For example, counsel established through his questioning, that the prosecution's witnesses could not determine how long Santana's hair was present at the scene, that they did not find it unusual for an individual's hair to be found in and around a home that the individual frequented, and that they could not determine how Santana's hair fell out of his head. Such testimony was important to the defense's effort to discredit the forensic connection linking Petitioner to the bodyless murder. Accordingly, Petitioner cannot establish that counsel was deficient. The state court's denial of this portion of Claim Five was therefore not an unreasonable application of Strickland. The Court should deny this portion of the claim.

29

iii.    **Ineffective Assistance of Counsel for Failure to Effectively Cross-Examine Witnesses**

Petitioner asserts that "[a] review of the entire record will demonstrate that defense counsel . . . did a very poor job cross-examining witnesses." (Supp. Br., at 47.) Petitioner does not provide further explanation or point to specific portions of the transcripts to illustrate these alleged errors. As discussed above, such a conclusory assertion does not provide a basis for federal *habeas corpus* relief. Nonetheless, I have reviewed the entire record and conclude that defense counsel was not deficient in his cross-examination of witnesses. Accordingly, the state court's denial of this portion of Claim Five was not an unreasonable application of Strickland. This Court should deny this portion of the claim.

For the reasons stated above, Petitioner has failed to meet his burden under Strickland with respect to each argument identified in Claim Five. The state court's denial of the claim was therefore not an unreasonable application of federal law. Accordingly, Claim Five should be denied.

5.    ***Ineffective Assistance of Appellate Counsel (Claim 6)***

Petitioner asserts he was deprived of his right to the effective assistance of counsel "by virtue of his appellate counsel's failure to present a meritorious argument on appellant's behalf while omitting claims that would have prevailed on direct appeal." (Pet'r Aff., at 11.) Petitioner's argument in support of his *error coram nobis* petition essentially argues that appellate counsel was deficient for failing to raise those claims that Petitioner raised in his supplemental *pro se* brief. Respondent contends the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't Supp. Mem., at 2-30.) Respondent is correct.

30

The Second Department's written decision denying Petitioner's *error coram nobis* petition represents the last-reasoned state court decision to address Claim Six.  See Ylst, 501 U.S. at 803.  It is clear that the court summarily denied this claim by determining that Petitioner "failed to establish that he was denied the effective assistance of counsel."  (Ex. M.)  This decision constitutes a denial on the merits for purposes of AEDPA.  See Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002); see also, e.g., Doran v. Fischer, No. 06 Civ. 3638, 2009 WL 3381537, at *10 (E.D.N.Y. Oct. 20, 2009).  Accordingly, I address Claim Six pursuant to AEDPA's deferential standard of review.

Petitioner fails to establish the second prong of Strickland.[17]  Petitioner cannot show that he was prejudiced by his attorney's failure to raise on direct appeal the claims that Petitioner himself raised in his supplemental *pro se* brief.  It is clear from the Second Department's decision that it considered Petitioner's *pro se* submission and the claims raised therein.  Accordingly, the state court's denial of Claim Six was not an unreasonable application of Strickland.  This Court should therefore deny this claim.

## IV.  CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

---

[17] Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to claims alleging ineffective assistance of appellate counsel.  See, e.g., Mayo, 13 F.3d at 533.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Deborah A. Batts, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Batts.

Dated: September 27, 2012
     White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

32

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Deborah A. Batts
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Rene Rivera, *pro se*
DIN #05-A-2079
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Carrie Anne Ciganek, Esq.
Office of the Rockland County District Attorney
County Office Building
New City, New York 10956